The next case on our call is case number 111534, People of the State of Illinois v. Curtis Leach. That is taken as agenda number eight. Counsel, are you ready to proceed? All right, you may proceed. Good morning. My name is Carolyn Clarquist, and I'm here on behalf of the appellant, Curtis Leach. Curtis Leach was denied his Sixth Amendment right to confrontation when, through the surrogate witness, when the state introduced an autopsy report through the testimony of a surrogate witness, and then that witness testified to the content of the report. The report was also admitted as substantive evidence against Mr. Leach, without the opportunity of him being able to cross-examine the declarant of the report, that being the medical examiner who testified, who conducted the autopsy in this case. The U.S. Supreme Court's Crawford line of cases are controlling in this instance, the most recent case being Bull Cumming v. New Mexico. This case is exactly like Bull Cumming v. New Mexico. Here, as in Bull Cumming, the report was admitted as a business record and then testified to under the guise of expert testimony. That was done through a surrogate witness, a witness who did not perform the test at issue. In our case, it's obviously an autopsy. In Bull Cumming, it was a blood alcohol concentration test. In this case, didn't the defendant admit to killing the witness? That's correct. Was that true in Bull Cumming as well? No, that's not correct. That was a drunk driving case, and he did not admit. In our case, Mr. Leach admitted that he had an altercation with his wife, and after a brief period of mutual combat, he ended up choking her. This is relevant in this case. Mr. Leach didn't have an opportunity to crack examine the medical examiner, and this is important because- Didn't the testifying medical examiner also have opinions that did not come from the prior forensic report that she developed or he or she developed from looking at the photos? She did. Were those opinions sufficient in and of itself? The issue is that whether or not it was sufficient and that she could only testify on the issue of strangulation from the photographs. That we agree, she could testify based on looking at the photographs. However, the key issue in the case was Mr. Leach's mental state, and that goes to Mrs. Leach's physical condition at the time of death. The testifying witness testified that Mrs. Leach had a normal cardiovascular system and that her vital organs were healthy. This is important because Mr. Leach was convicted of knowing murder, and that means that he knew what he was doing and for the length of time was practically certain to cause Mrs. Leach's death. Now, Mrs. Leach was in poor health, and the medical examiner who conducted the autopsy determined that she was obese. There was also testimony that she was a smoker. That medical examiner who performed the autopsy wrote in his autopsy report that basically her heart, cardiovascular, vital organs were normal, and that's what was testified to by the witness at trial. However, she had no personal knowledge of the decedent's physical condition at the time of death. There's nothing that she could have garnered to make that conclusion except for Dr. Choi's report. Is a medical examiner's report, an autopsy, is it always testimonial? It's testimonial once the doctor conducts the autopsy, concludes that the cause of death is homicide. Once it's determined it's a homicide and the medical examiner memorializes his findings in a report, then the presumption is, and the Supreme Court says this, does a reasonable person expect that their declarations, in this case which are done in a certified autopsy report, would be used to aid a police investigation? So if a body were brought into the medical examiner's office following a traffic accident and the medical examiner concluded the individual was dead before the accident and the cause of death was homicide, the report would not be testimonial. No, it would be testimonial because the report itself would say... It changed? I mean, they did the autopsy and then later determined that it was a homicide. Right, but the actual autopsy report itself, that's the document that memorializes the finding, and so that's what's being admitted against the defendant at trial. And if the medical examiner finds that it's a homicide, what the Supreme Court has said is that document, or whatever the document is, if that's made with the primary purpose of aiding a police investigation and could potentially be relevant in a criminal case, that document is by its very nature testimonial. So every time an emergency room physician treats a battered child or a victim of domestic violence, does he have reason to believe that the medical records he prepares will be used as evidence in a later trial? Yes, I believe so. And I think with health care workers, I think they are under a statute that says if you suspect child abuse, then you have to report it to the authorities. That instigates some sort of, not proceeding, but investigation. And that's what the Supreme Court was talking about. It's a preliminary aid to the investigation. And in this case, when Dr. Choi received Mrs. Leach's body, he was already notified that Mr. Leach confessed that he had strangled his wife. So from the outset, Dr. Choi presumably suspected that the cause of death is strangulation because that's what the police report provided to him said. So once he's conducting this autopsy, and he concluded that, yes, in fact, this was a homicide, his report, which was admitted as substantive evidence against Mr. Leach, made Dr. Choi a witness against him. And in doing so, once the state admitted that report into evidence, Dr. Choi either needed to be cross-examined, and he was not subject to cross-examination. He also wasn't shown to be unreliable. And under Crawford and his progeny, that violates Mr. Leach's Sixth Amendment right to confrontation. Getting back to Justice Garmon's example on an auto accident, and you said if it's a homicide, then the ME report is testimonial. Making that fact situation, but the ME finds that a person was killed in an auto accident, and it's later determined that someone intentionally rammed or did something to cause, is that a testimonial statement? Well, I suspect it would be, because if the report's going to be used as evidence again to the defendant to show that, yes, this individual was, A, killed, because that's an element of murder, and, B, the cause of death was the consequence of this car accident, that would be a piece of evidence that could be used against the defendant at that trial. You're saying it's used for more than just showing the manner of death. It's showing the cause of death. That's correct. That's correct. And what the U.S. Supreme Court has said is whether or not it's created as an evidentiary record. Well, when Dr. Choi, in this case, memorialized his finding in the actual report, he's creating an evidentiary record of the cause and manner of death and this woman's overall physical condition at the time that she died. So in those circumstances, the autopsy report, and particularly in this case, given that from the outset Dr. Choi knew that this was potentially a criminal case, and we know that because the U.S. Supreme Court says we have to consider what a reasonable person would expect in making this particular declaration. And here, when Dr. Choi made the declaration, as memorialized in his report, that Ms. Leach died of a homicide, the cause of death was strangulation, and the only reasonable presumption is that this would be used as evidence against Mr. Leach at a future criminal proceeding. Can you explain how this document was used? In other words, and considering the Williams case, was this used as just a recitation of the findings of Dr. Choi, or was it used to inform the opinion of the testifying witness, Wilson v. Clark? In this case, initially when you look at the testifying witness's testimony, she really is parroting what Dr. Choi found. She talks about the woman's dress upon arriving at the coroner's, her weight, her size, her height, those type of preliminary information. And she really goes through it, and if you look at the transcript, it matches up with Dr. Choi's report. So what happens there is that at trial, the State enters this report as substantive evidence pursuant to a hearsay exception, a statutory exception to the hearsay rule, which is 115-5.1. And that statute says that that report can be used as competent evidence in any court by the State. Well, this is exactly what the U.S. Supreme Court has expressly forbidden. The Court has said that the Sixth Amendment doesn't suggest any open-ended exceptions to confrontation should be designed by the courts. That's from Volkoming. Additionally, as far back as Crawford, the Court made a point of saying that coroner's statements enjoy no special status in our American legal system. They may have in common law in England, but they don't here in the United States. And also in Melendez-Diaz, that came up again. So the Court has repeatedly said, beginning in Crawford, that coroner's statements have no special status. And in this case, back to your question, once it was admitted, Dr. Choi became a witness. Now, what happened here is the same thing that happened in Volkoming. The State presented a surrogate witness who was qualified as an expert, and then she testified about the contents of Dr. Choi's findings. Well, she didn't observe the autopsy. She could only read the report. There's no video of the autopsy. She certainly wasn't present. She's not a supervisor. But did she draw any conclusions from it? She made an opinion. She did. Did she opine on it? She did. She made an opinion that Mrs. Leach was strangled. And she said that she, quote, agreed with Dr. Choi on that. Well, if Dr. Choi's not a witness, then how is she agreeing with him? Additionally, and what's critical in this case, is that she testifies that Mrs. Leach's overall condition, and particularly her cardiovascular system, was normal. And the testifying witness admits that her only knowledge of that is from Dr. Choi's autopsy report. There's no photographs of Mrs. Leach's cardiovascular system. We don't know how Dr. Choi determined that she had a normal cardiovascular system. And this is something that Mr. Leach was deprived of the opportunity to cross-examine Dr. Choi on. And this, again, went to his intent. You know, he presented a defense of involuntary manslaughter and, additionally, second-degree murder. And he was found guilty of knowing murder. In finding him guilty of knowing murder, the trial court specifically cited the length of time. The testifying witness said that it can take, I believe it's 10 to 30 seconds to render someone unconscious, and then three to six minutes for brain death to set in. Well, that's a normal person. Here we have, you know, the decedent is obese. She's a smoker. All we know is Dr. Choi found that she had a normal cardiovascular system. But that was a key issue that Mr. Leach should have been able to cross-examine Dr. Choi on. Because the testifying witness has no personal knowledge of that, none whatsoever. She doesn't have a photograph of the heart or anything like that where she can make a determination, whereas she could make a finding on strangulation, given the physical evidence that she saw in the photographs. Counsel, if we hold, as you ask, what are the ramifications of the holding, such as must the state in every murder prosecution depose the medical examiner who performed the autopsy immediately to protect his right to later prosecution? Well, the first thing I would point out is that in Melendez-Diaz and Volkoming, the state of Massachusetts and the state of New Mexico, respectively, advance a series of arguments basically arguing that the rule decided in that case is going to impose an undue burden on the prosecution. While the prosecution has the burden of proof, they have the burden of presenting witnesses against the defendant. With regard to autopsy, I would say as a defense attorney, most of the times the defense attorney doesn't necessarily want to cross-examine a medical examiner on the death and the findings on autopsy. A lot of murder cases are gruesome. You don't want to present to a jury that your victim was stabbed 25 times. That's not going to help your client. So in other cases, you can have a murder that has no autopsy because the body is decomposed to the extent that they can't determine the cause of death. I know recently near Chicago there's a case where the decedent has been dead since 1952. Then they're assuming the body now to do an autopsy, but, you know, had that person been cremated, there wouldn't be an opportunity for autopsy. A state's case, rather, doesn't hinge on autopsy findings. No, but my question was does the state have to take that position or depose the... That's up to the state. What the state can do is try and work out something with the defense counsel to, you know, have a stipulation. Often there's witnesses. If it's a shooting, you know, there might be witnesses. You have life-death witnesses. In fact, in this case, Mrs. Leach's mother testified that a family member identified the body at the coroner's and then she saw the body at the funeral home. So there are other ways to do this. And what the Supreme Court has made clear is that, you know, the Sixth Amendment rights of connotation isn't for the convenience of the state. What defense attorney wouldn't want to cross-examine in a situation like this? In this situation, he does. If he's not available. I'm sorry? If he's not available, he's retired, he's gone. And as you're arguing, the defense counsel would have wanted to cross-examine. But retirement isn't synonymous with unavailability. The state made notes showing that he wasn't amenable to subpoena, that he was refusing to testify, that he had a memory loss. And it's not Mr. Leach's burden to bring in the witnesses against him. That's the state's burden. Even in all of those situations, the state could simply bring in an expert and not rely upon. Of course. But in this case, what they did is they admitted a substantive evidence, which is what they did not do in Williams and in Lovejoy. In those cases, the underlying court at issue was not admitted a substantive evidence. In this case, it was. And what this court pointed out in Williams is, in that case, the expert did not parrot and just regurgitate the findings of the underlying report. When you look at the transcript here, you'll see that's exactly what the testifying witness did. She didn't have any independent opinion other than what she could see from the photographs. And as we pointed out. So you're distinguishing Williams then in that sense? Because that was going to be my question. I mean, I guess the U.S. Supreme Court granted cert in Williams at the end of June. So there's no reason from your perspective that we should wait on a pronouncement by the U.S. Supreme Court because you believe the facts in this case fall outside of Williams? Absolutely. And that's because our case, our autopsy report, the state admitted a substantive evidence through a statutory exception to the hearsay rule. This is exactly what the Supreme Court has said you can't do. There's no common law exception for evading a defendant's Sixth Amendment right to confrontation. It may be inconvenient for the state, but so is the defendant's right to elect a jury trial and his right against self-incrimination. So, you know, I would ask, you know, look at Melendez-Diaz and look at Bull Cummings because the state has already made a laundry list of fears they have. And as Justice Scalia said, the sky's not falling here. These things can be managed. And what it boils down to is you cannot circumvent a defendant's Sixth Amendment right to confrontation. Once they admitted this autopsy report, Dr. Choi became a witness against Mr. Leach. That means that Mr. Leach was required to have an opportunity to cross-examine him when Dr. Choi was not shown to be unavailable. He was just shown to be retired. And there was no prior opportunity of cross-examination in this case. Should it be part of our analysis, our concern, when you say that the evidence concerning the victim's condition was critical, is that an element that the state needed to prove? Is there anything to the old maxim that the defendant takes the victim as he finds them? I mean, if there's imperfection there, if his intent was to choke until she didn't move anymore, does it make any difference whether he knew based upon the expert testimony that it takes two and a half to three minutes to result in death and only 30 or 40 seconds to result in someone passing out? Or if the victim does have a problem, dies after 30 to 45 seconds. But in this case, Mr. Leach was convicted of knowing murder. And he argued at trial that it should either be second degree because there was a, I'm sorry, that they were involved in mutual combat and he overreacted, or alternative to that, involuntary manslaughter. And that does go to her physical condition. Because if he knowingly knew and there was a strong probability that she would be killed, it depends on how long she was able to sustain this kind of injury to her neck. If she was in a weakened physical state, you know, it would have taken a very brief time. And that would sort of negate any idea that he knowingly killed her. It would go more to second degree murder, and it would go more to a possibility of involuntary manslaughter. You know, it's still second degree murder. If the judge finds, well, you know, she was in bad physical health, you shouldn't have done this, we understand it was mutual combat. However, you're still guilty of second degree murder. Same if they found it was a conscious disregard for involuntary manslaughter. If she was in a weakened physical state, which there is some suggestion of that given that all we know, because Dr. Choi didn't testify, is that she was obese, 300 pounds, and seemed to be a smoker. So there is some line of questioning there. And this goes to one other point I have, and this is fleshed out. What do we do with the cases in Illinois, people versus Moore, for example, and I guess the majority of other jurisdictions it would appear that have seemed to say that there are both statutory and common law exceptions in this circumstance that survive Crawford. Well, I mean, I think if you read Bollcoming, which is the most recent case, the Supreme Court has yet again said you can't evade a defendant's Sixth Amendment right to confrontation. So Moore would have to be overruled? Yes, I would say yes. If the issue is something that's testimonial, which in our case is an autopsy, in Bollcoming it was a blood alcohol test, in Melendez-Diaz it was about drug composition, if that is found testimonial, the declarant who made that statement. What year was Bollcoming's? What year? Yeah. I think it was 2008. Oh, Bollcoming is this year, June 2011. 2011, okay. Yeah, that just came out. And I think in there Justice Ginsburg is pretty clear in her opinion. 2001? 11. 11. One other thing, if I can make a point about this, and this is what Bollcoming and Melendez-Diaz stress, the reason why cross-examination is so important is because it goes to showing that the declarant is reliable, that his findings are competent. It ensures reliability of the evidence being presented. This is exactly why the Supreme Court overruled Ohio v. Roberts, because there's no insurance of reliability except through cross-examination. The Court was very thorough in going through in Crawford the history of why we have a confrontation clause and what the roots of it are. And essentially what it boils down to is if you're going to present a witness against a defendant, you can't evade it by presenting an expert witness testifying to that underlying witness's findings. And that's exactly what happened here. We don't know if Dr. Troy retired. We don't know. This autopsy was done soon before his retirement. How closely do we know that he looked at the body? He knew when the body came in that it was a strangulation. How do we know that he closely looked at the woman's cardiovascular system? Can I squeeze a question in there? Doesn't bull-cumming would not apply in situations, I think, that came up today in questioning that a child is taken to a hospital, a doctor treats the child, the child then dies? So in any situation where a person is injured by another and subsequently died, but they're given treatment, that would not be covered by bull-cumming? I mean, it depends what the extent of the treatment is. In our case, we have an autopsy report, so I can only speak with authority on that. I thought bull-cumming said only when it was created solely for evidentiary purposes. So a child rushed to a hospital, that's not. Well, I guess in that case it would be an evidentiary purpose if a doctor writes up a report and says this child is the victim of child abuse. Because when it goes to the court and says you have to make an objective inquiry, when the declarant is making that statement, is there the potential that the statement itself could be used in a criminal proceeding? In this case, it is. Dr. Choi knew when he physically wrote out the autopsy report that it was a homicide. Dr. Choi works with the police. The police are the ones who notified him about this. And actually, if you look at the county and the state statutes, it says that, you know, the medical examiner is supposed to aid in a police investigation. So I think bull-cumming and Melendez-Diaz are very clear on these points. And in this case you can... Excuse me. Uh-huh. Your time has been expired. Oh, okay. Thank you. That's a very interesting argument, though. You may conclude if there's something else you want to add. No, just at this stage we would just, again, ask that his Sixth Amendment right be enforced. Thank you. Counsel for the aptly. Mr. Chief Justice and Honorable Justices, Counsel, may it please the Court, my name is Amy Wittrobekern. I'm an Assistant State's Attorney from Cook County here on behalf of the people of the State of Illinois. Based on the presentation of counsel's argument, I'd like to proceed in this manner. First, I would like to clarify one important factual point about the record and then address the Williams issue and then the business records issue. The important point to clarify about the record is what evidence was actually admitted against this defendant at trial. Dr. Choi's autopsy report was not admitted as evidence against this defendant. Dr. Arangelovich's testimony, giving her opinion regarding cause and manner of death, was the evidence that was admitted against defendant at trial. But the report was admitted pursuant to the statute, is that right? It was not admitted pursuant to the statute, no. It was simply moved. It was marked as an exhibit during her testimony to basically lay the foundation for her testimony to say, I reviewed the materials that were generated during the autopsy of the victim in this case to establish the relevance of her opinion, essentially. It was, you know, she referred to the specific autopsy number that the numbers matched on the documents, that the numbers matched on the photographs. And then she said that she reviewed these materials and reached her own expert opinion regarding cause and manner of death. It's no different than Williams in that respect. Did she testify as to the content of the report? She did discuss it. Read portions of it. I'm sorry? Read portions of it. She did. I don't know if she read verbatim, but based on her testimony, you could say she was probably paraphrasing. That would be a fair assessment. However, that really does not change the analysis because under Wilson v. Clark and its progeny, most recently discussed in Lovejoy and Williams, makes clear that an expert may discuss the basis of their opinion, including the findings and observations and facts gleaned by other experts. It's the manner in which these are discussed that's important. It's the purpose. And just like in Williams, it was done for the purpose of explaining her own expert opinion regarding cause and manner of death. Did the jury receive it? It was a bench trial. And I was just going to actually clarify that, that if this had been a jury trial, it would not have gone back. And that is the way to kind of, I think, illustrate the difference. It was marked as an exhibit during her testimony. It was moved into evidence at the conclusion of the trial or I think at the conclusion of the people's case in chief. But at that time, even defense counsel noted, Your Honor, this is a bench trial. Based on that, we have no objections. It would be offered for the limited purpose of explaining her opinion. It would not have gone back. So it was admitted? Well, it was introduced. It was moved into evidence. Neither was or wasn't admitted. Because I thought it was admitted. And really you said it was not. I think it's People's Exhibit 39. It is admitted into evidence, however, but not in the manner that counsel is suggesting. Section 115.5.1 allows for the admission of a document, an autopsy protocol, as prima facie evidence of cause and manner of death. That is not what happened here. It wasn't admitted pursuant to that statute. The statute doesn't even come up in the trial record. Is there any reference to the statute during the trial? Not during the trial. I don't remember off the top of my head if it's ever cited in any motions in limine or the post-trial motion. Was it argued at all in the appellate court, anything about the statute? Yes. Well, the statute was discussed to the portion of the Confrontation Clause analysis where it's relevant, which is determining whether the autopsy protocol is a business record under Crawford. And I'll step away from the Williams issue for a minute. As we lay it out in our brief, the primary issue presented by these facts is whether the autopsy protocol is a business record for purposes of Crawford. Crawford makes clear that traditional business records are non-testimonial by nature because of the nature of the document themselves. They're prepared in the ordinary course of business and, therefore, are not prepared with a purpose, a primary purpose of being used in lieu of live witness testimony. So in the appellate court opinion, the court, and I'll take one second. Would opinions in business records be admissible? I'm sorry? Would opinions in business records be admissible, or would you expect to even find opinions in business records? We have opinion here coming in. Yes. I get it. If an opinion is included in a business record that qualifies as a business record under Crawford, then by nature, yes, it would be non-testimonial. And so, therefore, whether it's admissible would then be a question of state law, but whether there's a confrontation problem, I would say no, there is not a confrontation problem. So when you're looking at business records, which is really the primary issue here, because if it's a business record under Crawford, then it doesn't matter to what extent Dr. Erangelovich relied on it or talked about it, it's non-testimonial. And if it's non-testimonial, then there's no confrontation clause problem here. So as the appellate court laid out, you look to Illinois business records and you look to the statute, which clearly establishes that protocols are business records or public records under Illinois law. So to give an extreme example, the angry clerk enters in a business record, that I know that Joe stole this money, that would come in under a business record? I would say no, and here's why. Because as Melendez-Diaz made clear, and Melendez-Diaz, Massachusetts, said that the record at issue, the certificate of authenticity proving the nature or the composition and weight of a substance, Massachusetts called that a public record. And the U.S. Supreme Court said no. States, you can't just call something a public record or a business record and get around Crawford. Rather, you look first to whether a state under its own rules of evidence and hearsay laws would characterize something as a business record, but you look at why. So just putting a label on it doesn't get, there's no per se rule. In fact, doesn't the court say in Melendez-Diaz, speaking about generally the business record rule, but that is not the case if the regularly conducted business activity is the production of evidence for use at trial. So isn't that what we have to look at? Was this document, was this activity of performing an autopsy the production of evidence for use at trial? Exactly. That's the narrow issue we have to discuss. That's under the first prong of this case, yes, because I think it's pretty clear that Illinois considers these records business records or public records based on the statute and the case law. Moore would be one case, for example. So then you look to see, well, is the primary purpose producing evidence at trial? And that answer is no. And that's where you look at the statutes and the ordinances governing the medical examiner's office and you look to see what the duties of a medical examiner are. And as we lay out in our brief, the medical examiners, well, first, it's nothing like a coroner's inquest. So those references in the U.S. Supreme Court cases are really not applicable here. Medical examiners are obliged by law to investigate and determine cause of death in at least 15 different enumerated situations, not all of which are criminal or involve homicides. I think it's death during a therapeutic procedure, death during the course of employment. It's very clear when you look at all of these situations that the business of the Cook County Medical Examiner's Office is the furtherance of the public health, is investigating causes and manners of death in death scenarios that further the public health. Now, whether it is initially indicated that a case is a homicide or not, or let's say it's not initially indicated it's a homicide, but later the medical examiner decides that in his opinion it is, doesn't change what the medical examiner does. They still do the autopsy, the internal exam, the external exam. They generate the same documents. It's the same process. So bull coming would not require overturning more, is that right, in your opinion? Yes, that is correct. Did I give you a double negative there? No, no. Bull coming does not really address the business record issue any further than Melendez-Diaz did. So where bull coming comes in is more under the Williams issue. So I'll step maybe to that for a minute. And on the Williams issue, just quickly, is there anything in the record to indicate back to this admittance of the autopsy report? Was there any comment made, you know, Judge, we're moving to admit this, but for the purpose, like a Wilson-Clark versus purpose, for the purpose of being a basis of the opinion of this expert? I think there's brief discussion on it, and I couldn't give you page sites right now, but there was a motion in Lemonnier filed by the defense to bar any medical examiner from testifying other than Dr. Choi. And so there's a brief ruling on that. And then just prior to Dr. Erangelovich's testimony, the defense attorney renews his objection, and at that time the court says, you know, I've ruled that this type of testimony, I think he says something to the effect it doesn't implicate Crawford, but it's not specific to Wilson versus Clark. But that was at least how I read it, that was the nature of it. Ms. Warren, getting back to what you were saying before in terms of the business record, if the courts have the opportunity or don't have the opportunity to cross or the defendant cross-examine the doctor who actually performs the autopsy, then in every case the situation will occur less what happened here. If there was some medical problem with the victim, there would be no opportunity to cross-examine the examiner who actually did the autopsy. As long as the medical examiner who performed the autopsy's opinion is not admitted as the substantive evidence, that's not a confrontation problem. That really is an issue that goes to weight. If it's an end run, it's still in evidence. In this case, it was still there for the trier of fact. In this case, it was the judge. But it's not evidence for its truth, and footnote 9 in Crawford specifically exempts the use of testimonial statements not offered for their truth. If any time a testimonial statement was quote-unquote admitted, if it was necessarily offered for its truth, then that footnote in Crawford would have no meaning. And in this situation, who does the defendant cross-examine about her health? Well, the defense attorney cross-examines Dr. Aranglovich about the victim's health and how that, just as he did in this case, how that impacted her ability to form opinions regarding this particular victim's death, whether it informed it or not. And I will make one factual point that I think Justice Carmeier brought up earlier. The whole time frame that Dr. Aranglovich's testimony about how long it takes somebody to go unconscious before or while they're being strangled was not initially fact-specific to this case. It was just general. And the facts of this case are that the defendant strangled this victim well past the time that she was unconscious, and he admits that in his statement. And so whether clinical death occurred, you know, at 45 seconds or three minutes, because he actually admits, and this is uncontroverted, that he strangled her for three minutes, whether clinical death or just being unconscious occurred wouldn't change the fact that she was not moving, and he continued to strangle her after she was not moving. So that's kind of really a red herring. And I guess I'll go back to Bowcoming, because I can't sit down without talking about Bowcoming. Bowcoming, this is not Bowcoming. Excuse me, are you trying to answer a question you haven't finished? Yes, from Justice Thomas, I believe. I have a question for you. Oh, okay. No, but you go ahead and finish. Okay. This is not Bowcoming. Bowcoming was really no different than Melendez-Diaz in that a document was admitted, a forensic analyst did testing, and that person's opinion was put in a document, and that document was admitted at trial. And it was admitted as the evidence of an element of the offense, the blood alcohol content, which was an element of this aggravated DUI offense. The only difference was that the state did it through the testimony of another analyst who worked in the lab. That analyst did not give his own opinion regarding the blood alcohol content, so it's not like this case. He really just, it was twofold. One, he laid the foundation for the admission of the document, and then two, the state took the position that this was good enough. You've got this analyst who's familiar with the procedures, and he can be crossed on it. And the court said, no, when you admit a specific person's, and I think they use when you introduce a person's statement into evidence for its truth, then the defendant's entitled to confront that person. And, again, so that's a distinction. Bowcoming is really not applicable. And the key, another key to look at in Bowcoming is Justice Sotomayor's concurrence because she very clearly lays out four factual scenarios that are not addressed by Bowcoming. And this is one of them. And Williams is certainly one of them. So that makes clear that Bowcoming really doesn't inform this Court's decision. Justice Coburn. Exhibit 29, at least from what I pulled out of our court file here, is the report from the medical examiner. And I believe it's four pages. Is that your understanding? I think that's about right, yes. And it was signed, dictated on July 23, signed by this medical examiner July 28, where the opinion is strangulation, manner of death, homicide. Correct. So July 28 was the date and dictated the 23rd. But attached to that is the toxicology report. And attached to that is a document called Forensic Institute Medical Examiner Case Report, Cook County. Are you familiar with that group? I'm not. And that was part of the exhibit? It is, yes. It was part of the packet, yes, that was admitted as. All right. So that was prepared, according to the document, June 30th. So that's before July 28th. And in, I'm not going to read the whole thing, but it says that the, refers to the discussions with Detective Franklin and so forth, and there's an investigation, and says the subject, presuming that's the body, along with a copy of the police report, were ordered into the Forensic Institute. So I'm having trouble understanding with that, as the setup of this, how this was not an autopsy prepared for the purpose of examining for forensic purposes and otherwise with a police investigation. Because I did leave this out on the conclusion for anatomic diagnoses. The first one's a medical term I can't pronounce. Two is foamy fluid in the trachea. Three is scene investigation. And four is police investigation. Right before the opinion and conclusion that it's a homicide. So I'm having difficulty understanding how this is not prepared for the purpose of testimony, at least for the, to further the investigation on the criminal charges. Because it's a broader question, I guess, is the best way I would address it, as to what the business of the medical examiner's office is. And I think Michigan v. Bryant, which is another recent U.S. Supreme Court opinion, might be the place to look. I'm not going to be able to quote specific language. But I think that they discussed primary purpose. That was the ongoing emergency scenario where a victim was shot and made statements to the police on the scene that Rick shot me. And they were determining whether those were testimonial. And that kind of hones the primary purpose analysis. And I believe there's language that says, just because it may be used doesn't mean that that's its primary purpose. So that would be my quick response to that. But that's a general view. I'm talking about the specific facts even in this report. But, again, I guess what I'm saying is that the duties and the documentation that would be generated during an autopsy and a medical examiner's investigation into the cause and manner of death wouldn't change at all based on what they knew before and what their ultimate conclusion was at the end. So if I remember correctly, because I think Dr. Erlangevich may reference this document briefly, that this may have accompanied the body or a number of things go with the body, I believe, to the medical examiner's office. So that they may have early indications that it's a homicide, it doesn't really change it. And the fact that she did, in fact, ultimately conclude it was a homicide also doesn't change the analysis. So if there had been an investigator's report saying, we think initial indication is homicide, and she determined natural causes, that doesn't change anything. It's really, it's the business of the Cook County Medical Examiner's Office, as with any business record. And I'll just briefly state, so it's the state's... Let me ask you one final question. Is there evidence in the record as to the actual operations of the medical examiner's office? I know you've argued in the brief there's 15 different categories, but I have no idea what the percentages are. One category represents 90% of what they actually do versus 115, for example. That's not in this record. There's discussion about it, but, again, I don't think there were percentages in the appellate court opinion. It's just based on an examination of the statutes. Instructive would be New York has a similar, from what I can glean, a very similar statutory scheme with its medical examiners. They are independent of law enforcement, and they have decided, they decided in Durio, which was slightly abrogated but then re-embraced in Freysenet, that because the medical examiner's office is not an arm of law enforcement, they operate independently of law enforcement, that the protocols they generate are business records under Crawford. So I would direct, you know, it's hard. The case's defendant cites saying that Illinois medical examiners are law enforcement are all from other states. Every state has its own statutory scheme defining evidence and the duties of medical examiners and sheriffs and things along those lines, so you really can't compare. But New York seems to be very similar, and actually the appellate court found New York's case as instructive in this case, and I think that reliance was appropriate and instructive. And unless there are any other questions, we ask that this court affirm the judgment of the appellate court, but recognizing that if the court reaches the Williams issue, the prudent course of action may be to hold for Williams. Thank you very much. Thank you. Initially I'd like to correct a factual mistake counsel made from the record. Before you do, I want to stick with Chief Justice Kilbride's area of inquiry. Is it your position, as I understand it, that in the case of an autopsy, if the medical examiner has even put on notice that there's an investigation, any type of investigation, that they have the type of knowledge that would indicate it may be a homicide investigation and therefore that would make the document testimonial in nature? Yes. I think that initiates the testimonial nature of the document, and it's only when that document is actually written, which memorializes the opinions of the medical examiner, and it's memorialized to say that this is a homicide, that means it's testimonial. It's a declarant saying that this murder was caused by another human being. It's a product of human agency, if you will. Tell me then what's wrong with opposing counsel's argument that the business of the ME is to do what they do, to do the examination and to render a report. What happens outside of that, whether there's some type of declaration of it being a homicide or an investigation pending or whatever, is the business of law enforcement, and they're going to come up with the examination regardless of what's happening on the outside. But I think you have to look at the bigger picture, and I think this is talked about in Melendez-Diaz. It doesn't necessarily have to be action initiated by the state. Justice Scalia says a person who volunteers their testimony against a defendant is still a witness. That means what they say, their declarations are testimonial. The same is true here, but more so for a medical examiner. The medical examiner, and the state cites this in their brief, part of what they're doing is aiding the investigation in that they're supposed to preserve the evidence. And especially in this case where, as you pointed out, the autopsy report we have in this case is irrefutable proof that Dr. Troy, upon receiving the body, knew this was a probable homicide. I think that's fair to say. And how this court should look at the issue, and this is from Crawford, a statement is testimonial, whereas a certified pretrial statement, that's what the autopsy is, it's a certified pretrial statement which establishes or proves past events. The autopsy report is proving a past event, that this woman was murdered. It's a homicide. The cause of death is strangulation. And that the statement was made under circumstances that would lead an objective witness, Dr. Troy, I would presume he's an objective witness when he's making this statement, to reasonably believe that the statement would be used at a later trial. I mean, the court has to look at the big picture here. And we have to follow what the U.S. Supreme Court says on this. The other issue with the business records, you know, the report is admitted as substantive evidence. It's admitted as States Exhibit 39. The state can't have it both ways. There's nothing in the record that says this is being admitted for the limited purpose to explain the opinion. Additionally, if you look at Boldcombing, what Justice Sotomayor says in her occurrence is that this isn't a case where the underlying document is also admitted. That's our case. That's exactly our case. Because not only do you have this expert witness testifying, but what she's testifying to is being admitted as substantive evidence against the defendant. That's exactly why it's submitted under the statute. Now, there isn't, from what I recollect when I agreed with counsel, the parties in the trial court didn't say on the record this is being admitted pursuant to 115-5.1. But how else is it admitted? I mean, it seems self-explanatory. It's admitted as a States Exhibit. And under that, it's an exception to hearsay rule. This is the definition of testimonial. Let's just say this was a jury trial and the judge had given a Wilson versus Clark type of instruction. Ladies and gentlemen of the jury, this hasn't been admitted for the purposes of ‑‑ Well, I mean, I think that's an issue the U.S. Supreme Court is going to take up. But at least for our purposes, and this Court talked about this in Williams, we're different than Williams here because the underlying report is admitted as substantive evidence. It's not admitted for a limited purpose. You know, the public court decision talks about the statute. The state talks about the statute in their brief. That's why I'm interested what's in the record as to what was said. I don't recall that. Because we also have law that indicates that the trial judge is presumed to know the law. We don't have a jury here. It's a bench trial. Right. And you would think that the judge would, if it wasn't admitted specifically under statute, why couldn't he, knowing the law, just use it for the limited purpose of bolstering the opinion, basis of opinion? Well, we don't know what the judge said in this case. I mean, we know what the judge says, but we don't know what his thinking was. There's nothing on the record that says, you know, when I consider all the evidence, I consider the photographs, I consider Dr. Choi's report. But what we do know is when he convicted Mr. Leach of first-degree knowing murder, he said it was the judge said it was the length of time that showed it was a knowing murder. And the length of time has a direct relation to Mrs. Leach's overall health. And that was the one point I wanted to correct from the record. The state argued that, you know, Leach said it was three minutes. That mistakes the record. What he said is, and this is on page 37 and 38 of his transfer from his statement, he initially says it was over in a matter of seconds. Then a couple sentences down he says a good three minutes. Then he says it was like another person was in me. And then he says around a minute or a good 15 seconds. He doesn't know. That's why it's so important that he have an opportunity to cross examine Dr. Choi on his wife's physical condition. Because it goes to whether or not he had the knowledge of what he was doing would cause her death. Or whether his acts were one of second-degree murder or one of involuntary manslaughter. And the other issue I'd like to touch on is his business records. Well, if it's a business record, then that means it was admitted as substantive evidence. Because that's what the statute is. It admits something as a business record. And in this case, Bull Cumming, the report there, was admitted as a business record. Well, the Supreme Court said, no, that's not acceptable. And then Melendez-Diaz, in fact, the court said, this is Justice Scalia, said, it's irrelevant whether it could also be characterized as a business record. The test is whether it's testimonial. And in this case, the definite testimonial evidence, or what a statement is as testimonial, is exactly this autopsy report. The report itself, as we said, was made to aid with the investigation. That's confirmed by the record. We know that because it's attached to the autopsy report itself. The state here has the burden of proof of showing that this error was not harmless beyond a reasonable doubt. They can't make that showing. And they can't evade Mr. Leach's Sixth Amendment right by trying to pass this off as a business record or trying to pass it off as, oh, it's just expert opinion. You can't do that when the underlying report is admitted into evidence against the defendant. And just on a final point, I would just ask this court to consider our argument today as well as those in our briefs. We also did raise a reasonable doubt argument for Mr. Leach. And we would ask that you consider. And ultimately, we think the appellate court's case should be reversed, its decision. Notably, it doesn't even mention Melendez-Diaz. So that, I think, stands alone as a reason why that decision is improper. And we would ask that you find that Mr. Leach was denied his Sixth Amendment right to confrontation when he was not able to cross-examine Dr. Choi and reverse and remand for a new trial. Thank you. Thank you. Thank you very much. Thank both counsels for fine arguments today, although it was mainly answering questions. Case number 111534, People v. Leach, is taken under advisement.